UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DUSTIN A.W.,[1]

        Plaintiff,                        Civ. No. 3:20-cv-01783-MO

v.                                      OPINION & ORDER

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

MOSMAN, District Judge:

Plaintiff Dustin A.W. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying benefits. The decision of the Commissioner is REVERSED and REMANDED for further proceedings.

## BACKGROUND

On August 27, 2018,[2] Plaintiff filed a Title XVI application for disability insurance benefits due to an alleged disability beginning on December 12, 1978, the day he was born. Tr. [ECF 10] at 174. The application was denied initially and upon reconsideration and, at Plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ") on September 16, 2019. Tr. 29. At the hearing, Plaintiff amended his alleged onset of disability to August 27, 2018. Tr. 34. On

---

[1] In the interest of privacy, this opinion uses only first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.
[2] Plaintiff had previously filed another separate Title XVI claim while represented by different counsel on September 11, 2013, but was denied coverage on October 28, 2015, and that decision was not appealed. Tr. 57–70.

Page 1 – OPINION & ORDER

November 21, 2019, the ALJ issued a decision finding Plaintiff not disabled. Tr. 13. On August 12, 2020, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. Tr. 1. This appeal followed.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r, Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

> The five-steps are: (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Id.* at 724–25; *see also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Bustamante*, 262 F.3d at 953. The Commissioner bears the burden of proof at step five. *Id.* at 953–54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953–54.

## THE ALJ'S FINDINGS

The ALJ performed the sequential analysis. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the amended alleged onset date ("AOD") of August 27, 2018. Tr. 15.

At step two, the ALJ found that Plaintiff had the following medically determinable impairments: "schizoaffective disorder bipolar type and history of Attention Hyper Deficit Disorder ("ADHD")." Tr. 16. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. *Id.*

The ALJ determined that Plaintiff had the residual functional capacity ("RFC") "to perform a full range of work at all exertional levels but with the following nonexertional limitations: he can do simple, routine, repetitive tasks with a reasoning level of 1–2, no public contact and occasional, superficial contact with a small group of coworkers; he should avoid concentrated exposure to hazards." Tr. 18.

At step four, the ALJ determined that Plaintiff has no past relevant work. Tr. 22. The ALJ found at step five that Plaintiff could perform jobs that exist in significant numbers in the national economy, specifically that Plaintiff could perform work as a janitor, cleaner, or hand packager. Tr. 23. As a consequence, the ALJ determined that Plaintiff was not disabled. Tr. 24.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *Batson v. Comm'r, Soc. Sec.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted).

In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

When the evidence before the ALJ is subject to more than one rational interpretation, courts must defer to the ALJ's conclusion. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). A reviewing court, however, cannot affirm the Commissioner's decision on a ground that the agency did not invoke in making its decision. *Stout v. Comm'r, Soc. Sec.*, 454 F.3d 1050, 1054 (9th Cir. 2006). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055–56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## DISCUSSION

Plaintiff asserts the ALJ erred by improperly (1) rejecting Plaintiff's subjective symptom testimony; (2) weighing the medical opinion evidence; and (3) discounting lay witness testimony. I address each issue in turn.

### I. Subjective Symptom Testimony

Plaintiff asserts that the ALJ erred by rejecting his subjective symptom testimony primarily on the basis that Plaintiff failed to consistently follow through with appointments. To determine whether a claimant's testimony is credible, an ALJ must perform a two-stage analysis. 20 C.F.R. § 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). At the second stage of the credibility analysis, absent evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of symptoms. *Id.*

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). An ALJ may use "ordinary techniques of credibility evaluation" in assessing a claimant's credibility, such as prior inconsistent statements concerning the symptoms, testimony that appears less than candid, unexplained failure to seek treatment or follow a prescribed course of treatment, or a claimant's daily activities. *Id.* The ALJ may also rely on "other evidence" factors such as activities of daily living ("ADLs"), claimant's reported descriptions of symptoms, and their treatment history in assessing a plaintiff's testimony. *See* 20 C.F.R. §§ 404.1529(c)(3)(i)–(vii), 416.929(c)(3)(i)–(vii).

### A. Plaintiff's Testimony

Plaintiff is a forty-year-old individual who has been homeless for most of his adult life. Tr. 35, 216. He spends most of his time in various shelters throughout Portland. Tr. 40. On occasion, Plaintiff has stayed at his mother's house. Tr. 41, 90. Plaintiff uses a skateboard and public transportation to get around; he does not have a car or driver's license. Tr. 90, 219, 813.

On November 10, 2017, Plaintiff was arrested and charged with breaking and entering a residence where he stole ethernet cables and wrapped them around his abdomen to prevent "aliens" from escaping "inside" his body. Tr. 44, 362. During his trial, Plaintiff's defense attorney recommended a psychological evaluation and referred Plaintiff to Dr. Suzanne Best. Tr. 362. Dr. Best met with Plaintiff and concluded he lacked the requisite intent to commit the crimes charged. *Id.* Plaintiff was placed on eighteen months' probation and was required to wear an ankle monitor. Tr. 278.

Plaintiff alleges he has several mental diseases that prevent him from seeking employment, including mania, psychosis, depression, ADHD, and suicidal tendencies. Tr. 217, 219. Plaintiff testified that "voices were telling me to steal cars." Tr. 45. Plaintiff has reported hallucinations and has been diagnosed with schizophrenia. Tr. 222. Plaintiff also testified about an incident in which he believed he was being chased by the ghost of a murdered little girl. Tr. 42.

In addition to mental health issues, Plaintiff also struggles with methamphetamine addiction. Tr. 88, 102, 609. This includes several periods of relapse which have resulted in eviction from halfway homes and temporary housing. Tr. 390, 450, 602.

To combat his ailments, Plaintiff testified that he has been prescribed "over 150 different types of medication" but "not a single one has ever worked." Tr. 40. Previous physicians have noted that Plaintiff's condition improved when treated with Lithium and Ativan. Tr. 222, 363.

At his hearing, Plaintiff testified that he "spends most of his days trying not to think about suicide and death." Tr. 40. When Plaintiff was fourteen years old, he tried to commit suicide by consuming his mother's sleeping pills and required hospitalization to remove them. Tr. 278, 370, 388, 401. On May 17, 2018, Plaintiff attempted to commit suicide by jumping off the OHSU bridge in downtown Portland. Tr. 279, 368, 388. Unable to scale the high walls, Plaintiff changed his mind and instead walked to the OPH Providence Medical Center and checked himself into the Crisis Assessment and Treatment Center ("CATC"). Tr. 365. Plaintiff was assessed as "high risk" for suicide and was closely monitored by tending physicians before his release two days later. *Id.*

Plaintiff gave sparse information regarding previous employment. Tr. 224. His mother explained in her Adult Function Report that Plaintiff "has not worked in the last 15 years." Tr. 237. On his Work History Report, Plaintiff wrote "not applicable" under the "Information About Your Work" section. Tr. 224. He did provide information for an unnamed position where he

"operated a cash register and assisted customers" and was paid ten dollars an hour for an unspecified time period. Tr. 225.

### B. ALJ Decision

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 19. The ALJ made this determination after assessing Plaintiff's testimony and finding inconsistencies concerning improvement in Plaintiff's mental health symptoms after treatment, a history of refusal to find and apply himself to work, and a description of severity inconsistent with the medical record.

The ALJ noted that Plaintiff's mental health symptoms improved after treatment. "Impairments that can be controlled effectively with medication are not disabling." *Warre v. Comm'r, Soc. Sec.*, 439 F.3d 1001, 1006 (9th Cir. 2006). An ALJ may rely on "instances of improvement" in the medical record "as a basis for concluding a claimant is capable of work" as long as those instances are not "isolated." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). Previous physicians have noted improvement when Plaintiff was treated with Lithium and Ativan. Tr. 222, 363. Upon Plaintiff's discharge from Multnomah CATC, the diagnosing practitioner wrote that Plaintiff's "insight and judgement [were] improved from admission." Tr. 409. On the other hand, Plaintiff testified that his depression was treatment-resistant and "medication is just not working." Tr. 40. Because these facts are subject to more than one rational interpretation, I defer to the ALJ's conclusion. *See Batson*, 359 F.3d at 1198. I also note that the ALJ accounted for Plaintiff's mental health limitations, providing that Plaintiff's ability to perform work "has

been compromised by nonexertional limitations." Tr. 23. It was not error for the ALJ to discount Plaintiff's testimony based on inconsistencies between the testimony and other medical evidence.

The ALJ's primary reason for discounting Plaintiff's testimony regarding the severity of his symptoms was that it did not comport with evidence showing limited participation in treatment during the relevant period. The ALJ noted that Plaintiff had "inconsistently and frequently missed [medical] appointments" and was "not compliant with treatment or medicine." Tr. 20. A failure to seek or follow treatment due to factors other than mental health issues is a valid consideration for discounting a plaintiff's testimony. *See Molina*, 674 F.3d at 1114. However, courts have held "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996). In light of these two rules, I focus on whether the ALJ considered whether Plaintiff's mental health symptoms limited his ability to follow through with treatment. *See* SSR 16-3p, available at https://www.ssa.gov/OP_Home/rulings/di/01/SSR2016-03-di-01.html (last accessed October 23, 2023). I find that the ALJ adequately weighed the evidence regarding Plaintiff's ability to follow treatment. The ALJ acknowledged Plaintiff's reported symptoms of "mood cycling," "psychotic symptoms," "anxiety," "depression," "psychosocial stress," and psychotic episodes. Tr. 19– 21. Not only did the ALJ acknowledge these symptoms, but the record shows that despite these symptoms, Plaintiff was aware that he has a disorder that requires treatment. *See, e.g.*, Tr. 365 ("I don't know what happened. I must have missed a dose [of Lithium]."). Therefore, it was not error to discount Plaintiff's testimony due to a failure to follow treatment.

Next, the ALJ questioned whether Plaintiff's alleged inability to work was attributable to Plaintiff's symptoms or Plaintiff' lack of desire to work. Courts have held that "poor work history," and "little propensity to work in their lifetime," are examples of valid reasons to discount a

plaintiff's testimony. *Whitten v. Colvin*, 642 F. App'x 710, 712 (9th Cir. 2016). Here, the ALJ explained that Plaintiff sometimes "does not want to get out of bed" or "would rather be dead than go to work," but noted that a "lack of desire to get out of bed is not disability." Tr. 19. Plaintiff has admitted that, when looking at people who work every day, he does not "want any part of that lifestyle," and he "choose[s] to exist outside of the game." Tr. 67. There is some countervailing evidence regarding Plaintiff's willingness to work. For example, Plaintiff testified that he has attempted to find work. Tr. 36, 46. Again, because these facts are subject to more than one rational interpretation, I defer to the ALJ's conclusion. *See Batson*, 359 F.3d at 1198. I find that the ALJ did not err in discounting Plaintiff's testimony due to a lack of interest in work.

On this record, I conclude that the ALJ gave clear and convincing reasons supported by substantial evidence in the record for discounting Plaintiff's subjective symptom testimony. The presence of a rational contrary explanation is not sufficient grounds to reverse the ALJ.

## II.    Medical Opinion Testimony

Plaintiff alleges the ALJ failed to identify a legally sufficient basis to reject the examining medical opinions of Dr. Esparza and Dr. Alvord. An ALJ must articulate the persuasiveness of the medical opinions in the record.[3] 20 C.F.R. §§ 404.1520c(a)–(b), 416.920c(a)–(b). Supportability and consistency are the two most important factors that determine the persuasiveness of a medical opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ may also consider the relationship with the plaintiff, physician specialization, and other factors like "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 416.920c(c)(3)–(5). "An

---

[3] The Social Security Administration has altered the regulation which governs the evaluation of medical evidence for claims filed on or after March 27, 2017. *Farlow v. Kijakazi*, 53 F.4th 485, 488 n.3 (9th Cir. 2022). Because this claim was filed on August 27, 2018, the newer system applies. Tr. 14.

ALJ is not required to explain how they considered the secondary factors unless they find that two or more medical opinions about the same issue are equally well-supported and consistent with the record, but not identical." *Derek M. v. Comm'r, Soc. Sec.*, No. 3:20-CV-01713-AC, 2022 WL 443980, at *7 (D. Or. Feb. 14, 2022). Ultimately, the court must determine whether the ALJ supported his decision with substantial evidence. 42 U.S.C. § 405(g).

### A. Dr. Esparza

Plaintiff asserts the ALJ erred by improperly assessing the opinion of psychologist Dr. Brian Esparza. On January 12, 2016, at Plaintiff's previous counsel's request, Dr. Esparza filled out a four-page Social Security Questionnaire which contained fill-in-the-blank answers to questions relating to Plaintiff's disability. Tr. 808–11.

The ALJ explained that Dr. Esparza's opinion was not persuasive because it was "dated well before the alleged onset date [of disability] and does not address the relevant period." Tr. 22. Plaintiff argues, without legal authority, that "the ALJ could not reject medical opinion on the *sole basis* that" it was dated before August 2018, the alleged amended onset date. Pl.'s Br. [ECF 11] at 17 (emphasis in original). Medical opinions that "predate the alleged onset of disability are of limited relevance." *Carmickle v. Comm'r, Soc. Sec.*, 553 F.3d 1155, 1165 (9th Cir. 2008). However, an ALJ may reject "the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

Here, the only evidence provided by Dr. Esparza was a four-page fillable form prepared by Plaintiff's previously retained counsel. Tr. 808–12. Under the question "How long have you been Mr. Wood's mental health provider?" Dr. Esparza answered, "Since February 2013," and under "How Often" he wrote "every 1–2 months." Tr. 808. However, some questions were left blank,

Page 10 – OPINION & ORDER

including crucial ones. *Id.* For example, Dr. Esparza left blank the question "In your judgment does Mr. Wood suffer from a schizophrenic, paranoid or other psychotic disorder characterized by psychotic features . . . that are persistent (continuous or intermittent)?" Tr. 809. Regarding Plaintiff's medication, Dr. Esparza noted no side effects and only listed two prescriptions: Lithium and Adderall. *Id.* This is in stark contrast to Plaintiff's testimony and other provided medical records. Because the report provided by Dr. Esparza was brief, conclusory, and inadequate, it has little value and the ALJ did not err in dismissing it.

### B. Dr. Alvord

Plaintiff argues that "the ALJ did not provide any valid basis for rejecting Dr. Alvord's report." Pl.'s Br. [ECF 11] at 12. On September 3, 2019, Dr. Scott Alvord performed a psychological evaluation of Plaintiff. Tr. 812–16. The evaluation consisted of a clinical interview and a "Mental Status Examination," but Dr. Alvord was provided "neither medical nor psychiatric records." Tr. 812. The ALJ reported that Dr. Alvord's opinion was "not persuasive" and "not consistent with the record as whole." Tr. 21. However, the ALJ's interpretation of the record is flawed.

The ALJ opined that "Dr. Alvord 'assumes' Plaintiff has a low IQ." Tr. 21. The ALJ explained that Dr. Alvord's opinion is inconsistent because "other treatment notes also indicate that Plaintiff does not have limited intellectual functioning." Tr. 21. First, Dr. Alvord did not find that Plaintiff has a low IQ, but instead said that Plaintiff's "intellectual ability is judged to fall in the low *average* range." Tr. 815 (emphasis added). Second, Dr. Alvord did not merely assume Plaintiff's IQ, but made the determination based on factors including Plaintiff's "vocabulary usage, and education/occupation history." *Id.* Third, Dr. Alvord noted that Plaintiff is "currently prescribed no medication" at the time he administered his tests. Tr. 813. In contrast, when Dr. Best,

the consultative examiner for criminal purposes, determined that Plaintiff had "above average intelligence," he had just taken Ativan (Lorazepam), which Dr. Best observed "noticeably" and "significantly" helped his thinking and cognitive functions. Tr. 362–63. It was error to discount Dr. Alvord's testimony based on his opinion of Plaintiff's intellectual ability because the ALJ misstates this opinion and because it was not inconsistent with the rest of the medical evidence in the record.

The ALJ found that "Dr. Alvord also states that the Plaintiff has had a number of suicide attempts over the past year, but . . . this statement is not corroborated in the medical record." Tr. 21–22. The ALJ again misstates the record: Dr. Alvord reported that "Plaintiff has been suicidal *long term* and has made a number of suicide attempts *over the years*." Tr. 813 (emphasis added). Plaintiff explained to Dr. Alvord that he had attempted suicide when he was fourteen by ingesting a bottle of his mother's medication. *Id.* Plaintiff reported this same event to Dr. Best as well as the OHSU bridge event in 2017. Tr. 363. As to the question of whether Plaintiff has made multiple suicide attempts, Dr. Alvord's report is not without support: Cascadia Behavioral Healthcare has noted a "history of suicide attempts," and Plaintiff's mother identifies several events which may be characterized as suicide attempts, such as jumping off a parking structure a "couple Christmases ago." Tr. 270, 435. If one counts the incident at the OHSU bridge as an attempt, then Dr. Alvord's account is unquestionably accurate. It was error to discount Dr. Alvord's opinion due to his statement on the number of suicide attempts because the ALJ mischaracterized the opinion and because it was most likely not inconsistent with the record.

Not only did the ALJ fail to give adequate justification for discounting the medical opinion evidence of Dr. Alvord, but the justifications provided were not essential to Dr. Alvord's most important conclusions. Dr. Alvord opined that Plaintiff's psychiatric prognosis is "guarded to

poor" and that Plaintiff's symptoms are "chronic and severe." Tr. 816. The ALJ found this opinion not persuasive because it "is not consistent with the record as a whole," but the inconsistencies identified by the ALJ do not fully undermine Dr. Alvord's opinion. Tr. 21. For instance, Dr. Alvord was clear that it was *not* his impression that Plaintiff "would have struggled given his assumed IQ and other abilities . . . if it weren't for chronic mental illness that is clearly contributory/treatment resistant." Tr. 815. Dr. Alvord did not base his opinion of Plaintiff's ability to work on Plaintiff's intellectual ability, so it was not rational for the ALJ to discount Dr. Alvord based on his IQ opinion. And on suicide attempts, Dr. Alvord did not base his opinion on Plaintiff's number of attempts, but rather focused on other indicators, including Plaintiff's "historical response to treatment." Tr. 816. Finally, Dr. Alvord's prognosis is consistent with other evidence: in 2019, Cascadia Behavioral Healthcare also found that Plaintiff's prognosis "is guarded." Tr. 686.

On this record, I conclude that the ALJ failed to give adequate justification for discounting the medical opinion evidence of Dr. Alvord. This error was harmful and Dr. Alvord's testimony should be more fully credited.

### III.   Lay Witness Testimony

Plaintiff alleges that the ALJ failed to consider the lay witness testimony provided in the record, specifically the Adult Function Report and the written statement from Plaintiff's mother. "In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r, Soc. Sec.*, 454 F.3d 1050, 1053 (9th Cir. 2006). Specifically, an ALJ must take into account lay witness testimony as to the severity of a plaintiff's symptoms. *Nguyen v. Chater*, 100 F.3d 1462 (9th Cir. 1996). However, errors in assessing lay witness testimony are harmless when the witness's testimony matches the plaintiff's

own testimony and the ALJ rejected the plaintiff's testimony for "well-supported, clear and convincing reasons." *Molina*, 674 F.3d at 1122.

Plaintiff's mother filed an Adult Function Report ("AFR"). Tr. 208–15. The report contained testimonies relating to Plaintiff's homelessness, his struggles with addiction, and mental health allegations and concerns. *Id.* The Commissioner concedes that the ALJ did not address the lay witness testimony of Plaintiff's mother. Def.'s Br. [ECF 12] at 7. When lay witness testimony merely repeats the Plaintiff's testimony, that is sufficient reasoning to discount lay testimony. *Valentine v. Comm'r, Soc. Sec.*, 574 F.3d 685, 694 (9th Cir. 2009). Plaintiff's mother explained in her AFR that Plaintiff has no real work history and struggles with his addiction and homelessness. Tr. 208–10. Because this report contained the same statements of Plaintiff's condition without any new information, the ALJ's failure to consider it in her decision was harmless.

Next, Plaintiff argues that "the ALJ erred by rejecting Wood's testimony without considering the written statement from Plaintiff's mother." Pl.'s Br. [ECF 11] at 13. Plaintiff's mother submitted a letter that explained Plaintiff's history of mental health issues. Tr. 269–71. Had the ALJ considered this evidence, it would have clarified some of the issues expounded upon in her decision. For example, the ALJ noted that Plaintiff was "denied Individualized Education Program assistance while in school" when finding that Plaintiff had above average intelligence as reported by Dr. Best. Tr. 21. Plaintiff's mother explained in her letter that she at first did not believe Plaintiff had ADHD, refused to give him treatments or seek school accommodations, and regretted the decision immediately when he became an adult. Tr. 269. Additionally, the ALJ relied on Plaintiff's testimony regarding his "lack of desire to get out of bed" and called into question the severity and consistency of his mental health symptoms. Tr. 20. Here, Plaintiff's mother contributed to the record and elaborated on issues that Plaintiff did not adequately explain.

Crucially, Plaintiff's mother noted prior suicide attempts by Plaintiff that he did not recall. Tr. 270–71. For example, on Christmas Eve when he was in his twenties Plaintiff jumped off a multistory parking lot after an altercation with local law enforcement while under the influence of methamphetamine. Tr. 270. Because this distinctive lay witness testimony conflicts with the ALJ's assertions and reasons for discounting Plaintiff's subjective symptom testimony, it was error not to address it.

## IV. Remedy

As discussed above, I conclude that the ALJ's determination contained harmful error, necessitating remand. The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. *Triechler v. Comm'r, Soc. Sec.*, 775 F.3d 1090, 1101–02 (9th Cir. 2014). A remand for award of benefits is generally appropriate when: (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed, there are no outstanding issues that must be resolved, and further administrative proceedings would not be useful; and (3) after crediting the relevant evidence, "the record, taken as a whole, leaves 'not the slightest uncertainty'" concerning disability. *Id.* at 1100–01 (quoting *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6 (1969)). If the record as a whole creates "serious doubt" as to whether Plaintiff is disabled, then a remand for further proceedings is appropriate. *Id.* at 1102 (citing *Garrison*, 759 F.3rd at 1021).

Here, the ALJ erred harmfully by discounting the medical opinions of Dr. Alvord and by failing to consider distinctive lay witness testimony. These errors are related to the ALJ's reasoning for discounting Plaintiff's subjective symptom testimony. If the improperly discredited evidence were credited as true, the record as a whole creates serious doubt as to whether the ALJ correctly decided that Plaintiff is not disabled. Therefore, I conclude that reconsideration is required to re-

evaluate the improperly discredited evidence and its impact on the credit given to Plaintiff's subjective symptom testimony.

## CONCLUSION

Pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is REVERSED and REMANDED for further proceedings. Final judgment shall be entered accordingly.

It is so ORDERED and DATED this 24th day of October 2023.

_____
MICHAEL W. MOSMAN
Senior United States District Judge